IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA A. JONES,

        Plaintiff,                        No. CIV S-07-1892 GGH

     vs.

MICHAEL J. ASTRUE,            ORDER
Commissioner of
Social Security,

        Defendant.
                                     /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born February 2, 1971, applied on May 22, 1999 for disability benefits. (Tr. at 23, 282.) Plaintiff alleged she was unable to work due to bipolar disorder. (Tr. at 23.) Plaintiff was granted benefits based on a prior 1998 application that was reopened. On May 1, 2004, plaintiff's benefits ceased as it was determined that plaintiff's condition had improved and

she was no longer eligible for benefits. (Tr. at 23, 246-49.) After hearing on the cessation, ALJ Mark C. Ramsey determined in a decision dated April 23, 2007, that plaintiff's eligibility properly ceased on May 1, 2004. The ALJ made the following findings:[1]

> 1. The claimant was found to be disabled within the meaning of the Social Security Act beginning February 1, 1998.
>
> 2. The medical evidence establishes that the claimant currently has severe impairments [sic], a depressive/bipolar disorder.
>
> 3. The medical evidence establishes that the claimant does not have an impairment listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The impairment present as of August 3, 1999, the time of the most recent favorable medical decision that the claimant was disabled, was a bipolar disorder.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 5. | | The medical evidence establishes that there has been improvement in the claimant's medical impairment since 1999 and as of May 1, 2004, the claimant's disability ceased. |
| 6. | | This medical improvement is related to the claimant's ability to work. |
| 7. | | The credibility of the claimant and the witness James Martin was found to be not fully credible for the reasons stated above. |
| 8. | | Beginning May 1, 2004 claimant has the residual functional capacity to perform heavy work with a restriction to unskilled work (20 CFR § 416.945). |
| 9. | | The claimant is able to perform her past relevant work as cashier or customer service representative. |
| 10. | | As of May 1, 2004, the claimant was a younger individual (20 CFR § 416.963). |
| 11. | | The claimant has a high school education (20 CFR § 416.964). |
| 12. | | Based on an exertional capacity for heavy unskilled work, and the claimant's age, education and work experience, section 416.969 of Regulations No. 16 and Rule 204.00, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled." |
| 13. | | The claimant's capacity for the full range of heavy work has not been significantly compromised by her additional nonexertional limitations. Accordingly, using the above-cited rules as a framework for decision making, the claimant is not disabled. |
| 14. | | The claimant's disability ceased on May 1, 2004 (20 CFR § 416.994(b)(5)(viii)). |

(Tr. at 32.)

ISSUE PRESENTED

Plaintiff has raised the following issues: A. Whether the Medical Evidence Supports the Conclusion that Plaintiff's Mental Impairments Continue to be Disabling; B. Whether the ALJ Erred in Finding that Plaintiff Could Return to Past Work As Plaintiff Does Not Have Past Relevant Work; C. Whether the ALJ Failed to Secure a Proper Waiver of

3

Plaintiff's Right to Representation; and D. Whether the ALJ Failed to Fully and Fairly Develop the Record Where Plaintiff was Unrepresented.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

A. Whether the Medical Evidence Supports the Conclusion that Plaintiff's Mental Impairments Continue to be Disabling

Plaintiff contends that the ALJ's findings that plaintiff's bipolar disorder was under control and she could do simple, unskilled entry level work, are not supported by the medical evidence. Specifically, plaintiff contends that although Dr. Risley stated that plaintiff's bipolar disorder was in remission, his Axis II diagnosis of borderline personality disorder was a primary diagnosis that he opined made it unlikely plaintiff could obtain or maintain a job.

Dr. Risley did variously diagnose plaintiff with borderline personality disorder ("BPD"), mild, and with BPD, mild to moderate. (Tr. at 584, 578.) Significantly, he diagnosed a mild degree of BPD prior to plaintiff's complaint to him that "Social Security is trying to cut off my SSI," but amended his diagnosis on the day of this statement, April 15, 2005, to "mild to

1 moderate," despite the lack of any noted changes in the record regarding plaintiff's functioning. (Tr. at 545, 585, 584, 578, 576.) On September 10, 2004, plaintiff was reported to be cooperative; her mood was good; affect was broad and congruent; thought form was linear and goal directed; speech was fluent with good modulation; there was no evidence of hallucinations or delusions; psychomotor activity was normal; insight and judgment were intact. (Id. at 585.) Dr. Risley diagnosed bipolar II disorder by history, in remission as an Axis I diagnosis, and borderline personality disorder, mild as a primary diagnosis under Axis II. However, he also stated in the same progress note that "patient is a pleasant woman with *historical diagnoses* of Bipolar II and Borderline Personality Disorder. Currently stable on Wellbutrin and Neurontin."[2] (Id.) (emphasis added). Dr. Risley's statements regarding BPD are inconsistent in this respect.

On October 29, 2004, plaintiff reported that she had an upcoming Social Security medical examination. (Id. at 584.) The psychiatrist's notes were similar to the ones provided on the September 10th visit. On March 1, 2005, mental status evaluation reported the same findings as the previous appointments, with the exception that plaintiff's mood was "sleepy." (Id. at 581.)

On April 15, 2005, the date Dr. Risley changed plaintiff's BPD diagnosis from mild to "mild to moderate," the mental status examination revealed that plaintiff was cooperative, mood was "very, very tired ... overwhelmed ... emotional (due to PMS)." Affect was broad and congruent. Thought form was linear and goal directed, but there were occasional periods of "marked circumstantiality that do not seem to be defensive." Speech was fluent with good modulation. There was no evidence of hallucinations or delusions. Psychomotor activity was normal. Insight and judgment were intact. (Id. at 578.) Once again, Dr. Risley noted that plaintiff was pleasant, that she had "*historical diagnoses*" of Bipolar II and BPD, and that she

---

[2] A condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling). Although it does not explain the entire period that plaintiff was eligible for disability, it does appear that plaintiff stopped her medications during 1999 when she gave birth to one of her children. (Id. at 23.)

5

was stable on Wellbutrin and Neurontin. (emphasis added.) He did add that she was "easily overwhelmed by life stressors." (Id.)

Based on these notes which did not change over time, with the exception of plaintiff's reported feeling of being overwhelmed and her statement that her SSI was going to be cut, the court concludes that Dr. Risley was acting as an advocate for plaintiff. See Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (ALJ may reject medical opinion where doctor acts as an advocate in claimant's pursuit of benefits).

It is true that Dr. Risley wrote a letter stating that plaintiff's impairments "make it unlikely that she might obtain or maintain gainful employment ..." (Tr. at 546.) This letter, however, is undated, and is inconsistent with his progress notes in that it diagnoses BPD without a qualifier such as mild or mild to moderate. (Id.) Furthermore, although he stated in this letter that plaintiff hears voices when not on medications, his treating records do not reflect this symptom. Nor do any notes indicate hallucinations or delusions during the period at issue. (Tr. at 545, 553, 555, 576, 577, 585.) This letter is further evidence of Dr. Risley's attempt to advocate for plaintiff.

The ALJ legitimately gave this psychiatrist no weight because despite his opinion that plaintiff had difficulty dealing with life stressors, she "was able to work part time for over a year while at the same time attending school six hours five days a week as well as live independently in her own apartment and raise her young child."[3] (Id. at 30.) These activities were done during the time that Dr. Risley treated plaintiff, and were reported by plaintiff herself to Dr. Risley during an office visit on October 29, 2004. (Id. at 584.) Furthermore, Dr. Risley's opinion regarding plaintiff's ability to work was not consistent with the medical records. (Id.)

---

[3] Plaintiff contends that the ALJ disregarded her testimony that she was fired from past jobs. Her testimony is that she was fired from McDonald's on one occasion because she was doing two jobs at the same time which she realized she couldn't do. She was later re-hired at McDonald's but was fired for allegedly stealing money, but plaintiff denies this allegation. She testified that she held this job for a year and a month, and was in training to be a manager at the time she was fired. (Tr. at 637-38.)

6

The ALJ also noted that plaintiff had never complained of frequent mood swings, manic symptoms or frequent depressive episodes, except during her testimony, and through the testimony of her friend and witness, Mr. Martin. For this reason and based on her full schedule of activities, the ALJ found plaintiff and her friend to be not fully credible. (Id. at 29-30.) Plaintiff does not contest this finding.

Plaintiff does contend that Dr. Risley noted GAF ratings of 50[4] in his treatment records, citing tr. at 554, 556, and 580. All of these citations are to periods preceding the period at issue, however, and concern the period during which plaintiff was found eligible for and received benefits.[5]

Furthermore, Dr. Risley's notations of mild or even mild to moderate BPD do not warrant further development of the record.[6] There are no other such diagnoses in the record.

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

[5] Plaintiff claims that one of the record cites is for October, 2005; however, tr. 554 is dated only "October," and does not state a year. This record is located in the transcript near other records dating from 2003. (Pl.'s Mot. at 8; tr. at 554, 553, 555.)

[6] Of note is the information provided by the Diagnostic and Statistical Manual of Mental Disorders 688 (4th ed. text rev. 2005) ("DSM-IV"):

> A Personality Disorder should be diagnosed only when the defining characteristics appeared before early adulthood, are typical of the individual's long-term functioning, and do not occur exclusively during an episode of an Axis I disorder. ...
> The clinician must be cautious in diagnosing Personality Disorders during an episode of a Mood Disorder [such as bipolar disorder] because these conditions may have cross-sectional symptom features that mimic personality traits and may make it more difficult to evaluate retrospectively the individual's long-term patterns of functioning.

Furthermore, one of the world's leading authorities on bipolar disorder, Dr. Frederick Goodwin, M.D., testified in another case as follows:

1   The ALJ did not have a duty to be plaintiff's advocate in meeting her burden.
Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993).
Plaintiff has the ultimate burden of proof to produce the evidence that demonstrates she is
disabled, 20 CFR § 404.1512(a); Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. In this
case, the ALJ ordered more recent treating records after the hearing, and considered the medical
records and other evidence in addition to the hearing testimony which provided ample
information for him to comply with his duty. The ALJ fully and fairly developed the record for a
fair adjudication.

B. Past Work

Plaintiff next claims that her past jobs do not amount to substantial gainful
activity and therefore she has no past relevant work. As a result, plaintiff claims a vocational
expert is necessary to identify if any jobs exist based on her residual functional capacity.

The Guidelines in table form ("grids") are combinations of residual functional
capacity, age, education, and work experience. At the fifth step of the sequential analysis, the
grids determine if other work is available. See generally Desrosiers v. Secretary of Health and
Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional
limitations, so long as the nonexertional limitations do not significantly impact the exertional

\\\\\
\\\\\

---

> Bipolar disorder is such a serious disorder, that in its presence,
> possible personality disorders become nearly irrelevant. Personality
> disorders in themselves do not give rise to the cognitive deficits
> and severe mood swings that exist with bipolar disorder.
> Personality disorders in themselves rarely prevent a person from
> working productively. ... Being concerned about personality
> disorder when a person is bipolar is like trying to arrange the deck
> chairs on the Titanic.

Fitts v. Unum Life Ins. Co. of America, 2007 WL 1334974, *2, *16 (D.D.C. 2007).

8

capabilities.[7] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d 1033 (9th Cir. 2001).

Plaintiff's argument regarding her past earnings will not be reached as the ALJ found in the alternative that under the guidelines, plaintiff could do heavy unskilled work which was not compromised by her nonexertional limitations. (Tr. at 32.) Any error based on past earnings was therefore harmless. An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).

The record supports this finding. Although plaintiff stated that she has problems dealing with stresses and is unable to work, the ALJ found plaintiff to be not fully credible, and plaintiff has not contested this finding. Plaintiff's mental impairments have been well controlled

---

[7] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

with medication, and she has worked while attending school and caring for a young child while living independently. Plaintiff had never reported problems to her treating sources about getting along with others. In addition to working at a job requiring constant dealings with the public, and going to school where she was required to interact with others on a regular basis, plaintiff was also in a weekly bowling league. (Tr. at 642-43.) She also has two friends whom she has known for seven or eight years, and who she sees almost every day. (Tr. at 626-27.) Her witness friend testified that she did not currently have more friends because she had to cut them loose due to their bad habits such as abusing drugs. (Id. at 658.) She also visits with her mother regularly. (Tr. at 645.) All of these statements are based on plaintiff's own reporting. Because such evidence does not significantly reduce plaintiff's capacity for unskilled work, the ALJ's decision to rely on the grids is supported by the evidence. Any moderate restrictions in social functioning do not warrant departure from the grids.

Social Security Ruling 85-15 requires in part that one be able to respond appropriately to supervision, coworkers, and usual work situations. These regulations also explain that unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. SSR 85-15. The court cannot find that the ALJ was required to call a vocational expert because the ALJ found plaintiff could do unskilled work, and based on the evidence that plaintiff's limitations were not significant. Accordingly, his use of the grids was appropriate.

C. Waiver of Right to Representation/ Development of the Record

Plaintiff contends that although the ALJ asked some questions to determine whether plaintiff made an informed choice to waive representation, her responses indicate that she may not have been able to make an informed choice.

Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived. Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984), citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982); Floyd v. Schweiker, 550 F. Supp. 863 (N.D. Ill. 1982). Even if the waiver is deficient, plaintiff must demonstrate prejudice or

10

unfairness in the proceedings in order to obtain a remand. Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether without the representation, the ALJ met his burden "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in order to protect plaintiff's interest. Id., quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at hearing. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff can show prejudice or unfairness in the administrative proceeding as a result of not having counsel is remand warranted. Vidal, 637 F.2d at 713.

Plaintiff contends that the transcript indicates her responses to the relevant questions by the ALJ do not indicate she was capable of making an informed choice in a couple of ways. First, she claims she thought two witnesses would be an adequate substitution for legal representation because they could vouch for her. The colloquy at hearing in this regard indicates that the ALJ fully questioned plaintiff regarding representation:

> ALJ: In the notice of hearing I advised you you had the right to be represented at this hearing by a lawyer or other representative, did you understand that right?
> CLMT: Yes, I just didn't think I'd need a lawyer.
> ALJ: Alright. Since you're here with[out] a lawyer, am I correct in understanding you wish to proceed without such representation?
> CLMT: Yes, but I also have two gentlemen that have known me for a long period of time that's waiting in room 200.
> ALJ: Okay.
> CLMT: So they could vouch for things that I've done.

(Tr. at 626.) The ALJ then proceeded to ask who these individuals were, if they lived with plaintiff, how often they see her, whether they work, and about the criminal background of one of them. The ALJ then suggested that plaintiff choose the best witness. (Id. at 626-27.)

Plaintiff argues that she believed "vouching" for her would be an adequate substitute for representation, but that HALLEX recommends that an unrepresented claimant be provided with information about free legal services, contingency representation, and organizations which might assist. The ALJ did not provide this information.

Plaintiff cites to the Manual on the Social Security Administration Hearings, Appeals and Litigation Law (HALLEX) I-2-6-52 which requires that the ALJ ensure plaintiff has made an informed choice to waive representation. HALLEX contains the Social Security Administration's interpretations of its regulations. Plaintiff's argument is unavailing as HALLEX carries no legal force and is not binding. Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003). The remainder of the colloquy indicates that the ALJ properly inquired into all relevant facts in this regard.

Plaintiff also objects to the ALJ's failure to ask plaintiff if she understood the legal issues until after she waived her right, and that it is not clear that she understood the issues once the ALJ explained them. This argument is also unpersuasive as the ALJ was especially diligent in explaining the issues. He first gave her the standard for disability in terms of length of time and severity of medical problem, especially in terms of preventing her from doing any job that exists, not just her past work. He explained all of this in straightforward language and plaintiff responded that she understood. (Id. at 834-35.) Her questions indicate that she understood her earnings records in her file, and she advocated for herself in explaining to the ALJ that she only had one job lasting longer than six months, and that she was fired from all the jobs. These explanations go directly to the issues raised in plaintiff's motion, indicating that she understood the issues. (Id. at 635-36.)

Even with all these contentions by plaintiff, she has failed to show how she was prejudiced by these proceedings. She does not establish what would have been done differently if she had had representation. Turning to the real question, whether the ALJ diligently explored all relevant facts in light of plaintiff's pro se status, the record indicates that he did.

Disability hearings are not adversarial. Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[8] The duty also is heightened in the case of a mentally ill claimant who may not be able to protect him or herself. Id.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation. See Tonapetyan, 242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B). Ordering a consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when necessary to resolve the disability issue. See Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

\\\\\

---

[8] See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

After explaining how the hearing would proceed and what subject areas would be covered, the ALJ questioned plaintiff about her right to a representative, and advised her concerning how to choose a witness. (Id. at 626-27.) The ALJ then explained the main issue for the hearing which was the Administration's decision that plaintiff's disability ended in 2004. Plaintiff clearly expressed her understanding of that issue by responding appropriately and as an advocate for herself:

> ALJ: – and they felt there's been medical improvement in your condition, in your depression.
> CLMT: Not so.
> ALJ: And they felt that your disability ended May 2004.
> CLMT: Not true.
> ALJ: Okay, that's why we're here.
> CLMT: Yeah.
> ALJ: Social Security Administration feels that it ended 2004, you disagree –
> CLMT: Uh-huh.

(Id. at 628.)

The ALJ then reviewed plaintiff's medical records, living situation, schooling, and then discussed her work history. (Tr. at 628-34.) He thereafter explained the standards for disability as described above. (Id. at 634.) Plaintiff then defended her lack of work record. (Id. at 636-38.) The ALJ questioned plaintiff about her daily activities, her family, and her medical history, asking many more questions than is usual. In all, the hearing transcript is over 34 pages, and is quite developed. Plaintiff exhibited no hesitation in acting as her own advocate. At one point, the ALJ asked how often plaintiff was manic or elated, in regard to her bipolar disorder. She responded that she deals with it every month. He then asked, "so once a month you're manic?" She responded, "I said every month. I would say maybe four, five times out of a month. There's times to where I can't sleep at night so I'm up until like 12, 1:00, maybe 2:00 in the morning, and then I've been dealing with, I was diagnosed with sleep apnea and I have a C-PAP machine but that's not helping me to get a full night's rest." (Id. at 650-51.) Plaintiff was able to respond to the questions in a manner that was not only in her best interest and to correct a

14

misinterpretation by the ALJ, but was able to supply additional information that was not asked by the ALJ but was pertinent to the discussion. When plaintiff informed the ALJ that she had been getting her prescriptions through Turning Point, the ALJ specifically noted that he would obtain these updated records.[9] (Id. at 630, 652, 660.) Further, although the ALJ thought plaintiff's second lay witness would be duplicative, he permitted her to submit a witness statement in a time frame suggested by plaintiff. (Id. at 659-60.) Finally, the ALJ explained how the post-hearing development would proceed and that he would go through the file again in detail. (Id. at 660.)

Furthermore, as pointed out by defendant, this is not the type of case involving a mentally ill claimant who cannot protect herself. The aforementioned citations to the record indicate that plaintiff was clearly able to advocate for herself. Furthermore, her mental impairments are not based on a lower intellectual functioning or cognitive limitation, but rather are limited to her mood swings, anger problems, and irritability. Plaintiff is a high school graduate, and received a certificate of completion from Northwestern College as a medical software specialist. (Id. at 633, 367.) The DDS psychiatrists opined that plaintiff could do simple, complex and detailed tasks. (Id. at 465, 492.) This evidence supports plaintiff's ability to represent herself without prejudice.

The court concludes that the ALJ obtained a proper waiver of plaintiff's right to representation, and fully and fairly fulfilled his duty to develop the record.

\\\\\
\\\\\
\\\\\
\\\\

---

[9] Plaintiff claims that the ALJ could not ask about Dr. Risley's diagnosis of "re-emergent depression," because he did not have these records at the time of the hearing, however, she has not shown prejudice in terms of what she would have argued at hearing had she been represented. The records speak for themselves. The ALJ did specially obtain them and review them, and properly rejected Dr. Risley's opinion.

15

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is entered for the Commissioner.

DATED: 03/12/09 /s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Jones1892.ss.wpd